UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                                    :
BLOOMBERG L.P., BLOOMBERG FINANCE                                   :
ONE L.P., and BLOOMBERG FINANCE L.P.,                               :   No. 15-cv-9668
                                                                    :
                 Plaintiffs,                                      :
                                                                    :   **COMPLAINT**
                 v.                                               :
                                                                    :   **JURY TRIAL DEMANDED**
GLOBAL RELAY COMMUNICATIONS INC.                                    :
and GLOBAL RELAY USA INC.,                                          :
                                                                    :
                 Defendants.                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

        Plaintiffs, Bloomberg L.P., Bloomberg Finance One L.P., and Bloomberg Finance L.P. (collectively, "Plaintiffs" or "Bloomberg"), by and through their undersigned counsel, Shapiro Arato LLP, for their Complaint against Defendants Global Relay Communications Inc. and Global Relay USA Inc. (collectively, "Defendants" or "Global Relay"), allege as follows:

        1.     Bloomberg is a well-known and preeminent financial information, software, and media company founded by Michael R. Bloomberg in 1981, and the owner of the famous "Bloomberg" trade name and BLOOMBERG trademark and service mark (collectively, the "Bloomberg Mark").

        2.     Bloomberg brings this action for trademark infringement, trademark dilution, and unfair competition to remedy Global Relay's misleading advertising and opportunistic use of the Bloomberg Mark falsely to convey that Bloomberg supports or is affiliated with a Global Relay service that provides customers with storage solutions for electronic communications sent and received through Bloomberg's innovative and proprietary technology.

   3. Bloomberg's core business is the delivery of data, analytics, news, and related services to financial companies and organizations through a proprietary platform known as the BLOOMBERG PROFESSIONAL® service.

   4. This case relates to communication tools available through the BLOOMBERG PROFESSIONAL service, branded/known as BLOOMBERG® MSG, INSTANT BLOOMBERG® messaging, and BLOOMBERG VAULT® archiving services. BLOOMBERG MSG and INSTANT BLOOMBERG are leading email and chat tools used widely by the global financial community. BLOOMBERG VAULT provides an array of critical archiving solutions to companies including those in the financial services industry that are required by law to preserve and store their business communications, often for years.

   5. Global Relay competes with Bloomberg to provide document archiving services to subscribers to the BLOOMBERG PROFESSIONAL service who generate electronic communications via BLOOMBERG MSG and INSTANT BLOOMBERG. Bloomberg does not challenge, and has never sought to challenge, Global Relay's right honestly to compete with Bloomberg or to inform Bloomberg's customers and potential customers that the Global Relay Archive service can be used to archive communications that are sent via Bloomberg's platform. But Global Relay has not been competing with Bloomberg either fairly or lawfully. Instead, Global Relay has falsely advertised its services and used the Bloomberg Mark to promote its services in a manner that is likely to confuse customers and potential customers into believing that Bloomberg sponsors, endorses, or is otherwise connected to or affiliated with Global Relay's Archive service. Global Relay has done so because it cannot otherwise counter Bloomberg's unique ability to provide superior archiving solutions for Bloomberg messages through a single, integrated platform.

6. For example, Global Relay has falsely advertised that it provides its archiving services in "real time." It is, however, technologically impossible for Global Relay to archive Bloomberg messages in "real time" because an outsider like Global Relay has no portal into Bloomberg's proprietary platform and cannot access Bloomberg messages directly and instantaneously from Bloomberg's clients. Accordingly, Global Relay's claim has falsely implied that it has a special relationship with, and special access to, Bloomberg and the Bloomberg platform – and it does not.

7. Global Relay also has gone beyond merely informing customers that Global Relay can be used to archive Bloomberg communications. Instead, Global Relay has displayed the Bloomberg Mark in select marketing and instructional literature in large typeface using the distinctive Avenir lettering style and the color scheme used by Bloomberg (the "Bloomberg Logo"): in other words, **Bloomberg**, instead of Bloomberg (although much larger than displayed here).

8. Global Relay did not need to use the Bloomberg Logo or misrepresent the characteristics of its archive service to advertise that it is capable of archiving BLOOMBERG MSG and INSTANT BLOOMBERG messages, or to explain how its customers can use this service. Rather, Global Relay did so opportunistically to convey the false impression that it is affiliated with or approved by Bloomberg, a message that provides Global Relay with an invaluable, but dishonest tool to promote its services.

9. Neither Bloomberg nor any of its affiliates is associated with Global Relay in any way, and there was and is no legitimate reason for Global Relay to seek to convey such a false connection. Instead, Global Relay was seeking to capitalize unfairly on the strength and value of the "Bloomberg" name and the Bloomberg Mark for its own financial gain.

10. Through this lawsuit, Bloomberg asks this Court to halt Global Relay's tortious conduct, protect Bloomberg's marks, protect consumers, and prevent Global Relay from engaging in this type of conduct in the future. In addition, Bloomberg asks that this Court order Global Relay to compensate Bloomberg in the amount of its damages and Global Relay's profits, and order payment of treble damages, costs, and reasonable attorney's fees, as a result of Global Relay's willful and intentional misconduct.

## THE PARTIES

11. Plaintiff Bloomberg L.P. is a limited partnership organized under the laws of the State of Delaware, with its principal place of business in New York City.

12. Plaintiff Bloomberg Finance L.P. is a limited partnership organized under the laws of the State of Delaware, with its principal place of business in New York City. Bloomberg Finance L.P. is a wholly owned subsidiary of Bloomberg L.P., and it directly or indirectly owns the registrations for the Bloomberg Mark around the world.

13. Plaintiff Bloomberg Finance One L.P. is a limited partnership organized under the laws of the State of Delaware, with its principal place of business in New York City. Bloomberg Finance One L.P is a wholly owned subsidiary of Bloomberg Finance L.P.  It directly owns the United States trademark registrations for the Bloomberg Mark and licenses the Bloomberg Mark to Bloomberg L.P.

14. Defendant Global Relay Communications Inc. is a corporation organized under the laws of Canada, with its principal place of business in Vancouver, Canada and offices in New York City, located at 286 Madison Avenue, 7th Floor, New York, NY 10017.

15. Defendant Global Relay USA Inc. is a corporation organized under the laws of the State of Delaware, with its principal place of business in New York City.

**JURISDICTION AND VENUE**

16. This is an action for trademark infringement arising under the Lanham Act, 15 U.S.C. § 1501, *et seq.* This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a), and 15 U.S.C. §§ 1116, 1121, and 1125. This Court has jurisdiction over Plaintiffs' supplemental state law claims pursuant to 28 U.S.C. § 1367.

17. This Court has personal jurisdiction over Global Relay under N.Y. CPLR § 301, in that Global Relay continuously does business in this State through its offices located in New York City.

18. Venue in this District is appropriate pursuant to 28 U.S.C. § 1391(b)(1) and (c) in that Global Relay resides for venue purposes in the Southern District of New York.

**FACTUAL BACKGROUND**

**A.     The Bloomberg Company and the Bloomberg Mark**

19. Bloomberg is one of the largest worldwide providers of financial news, data, analytics, and information and related goods and services. Bloomberg provides influential decision makers worldwide with data, analytics, news, and insight to give them a critical edge. Bloomberg applies its extensive data, news, and technology to offer new tools in ever-expanding fields, including finance, government, law, energy, and data management.

20. The company that would become Bloomberg L.P. was founded by Michael R. Bloomberg in 1981 and, in 1987, adopted and commenced use of "Bloomberg" as its trade name and corporate identity, as well as use of the Bloomberg Mark. Since then, the Bloomberg Mark has been used continuously and globally by Bloomberg L.P. and its affiliated companies.

21.     Bloomberg first registered the Bloomberg Mark in the United States in 1990.  It is the owner of, among other registrations, U.S. Trademark Registration Nos. 2,736,744 and 3,430,969 for the Bloomberg Mark, and it owns common law rights in this mark as well.  The Bloomberg Mark is valid, subsisting, unrevoked, and uncancelled.  Copies of the federal trademark registrations for the Bloomberg Mark are attached as Exhibit A.

22.     Since the inception of the business in 1981 and the adoption and use of the Bloomberg name in 1987, the Bloomberg Mark has become exclusively associated and identified with Bloomberg and its products and services.  The Bloomberg Mark has acquired universal acceptance and recognition as being synonymous with quality and excellence in products and services.

23.     Since 2001, the Bloomberg Mark has been depicted in distinctive Avenir font, and currently, only in black, yellow, or white.

24.     Consumers, potential consumers, and other members of the public not only associate Bloomberg products and services with exceptional quality, but also recognize that they originate exclusively with Bloomberg.  Consequently, Bloomberg has acquired and enjoys an outstanding reputation and significant goodwill associated with the Bloomberg Mark on and in connection with Bloomberg's products and services, and the Bloomberg Mark is thus an invaluable asset of Bloomberg's.

**B.     BLOOMBERG MSG, INSTANT BLOOMBERG, and BLOOMBERG VAULT**

25.     INSTANT BLOOMBERG is a leading chat tool used by the global financial community.  This tool is completely integrated into Bloomberg's single platform and allows users to design and instantly share live data, charts, analyses, lists, and even a full desktop to collaborate quickly and easily with colleagues and trading partners.

26. BLOOMBERG MSG is an email service that Bloomberg has provided to users through the BLOOMBERG PROFESSIONAL service since 1993. BLOOMBERG MSG is available to more than 325,000 subscribers worldwide, and its users send over 8 million emails per day.

27. BLOOMBERG VAULT is a secure managed service that archives and stores electronic communications for information governance, data analytics, and trade reconstruction. BLOOMBERG VAULT is backed by the reliability and scalability of the BLOOMBERG PROFESSIONAL service, one of the world's largest private networks. Built using Bloomberg's deep domain expertise in electronic messaging, BLOOMBERG VAULT provides a global, always-on, hosted data service with a demonstrated track record of uninterrupted uptime and data security. Among other advantages, BLOOMBERG VAULT allows companies to monitor their Bloomberg message communications faster than any other archiving service, and to meet compliance and recordkeeping requirements of the SEC, FINRA, and the CFTC.

C. **Global Relay and Its Infringing Use of the Bloomberg Mark**

28. Global Relay is a Bloomberg competitor that bills itself as the "expert in Compliance Messaging Solutions, including Compliance Archiving, Messaging, Mobile and Collaboration." Central among Global Relay's offerings is its "Global Relay Archive for Bloomberg" service, which purports to "automatically capture and archive" communications sent via BLOOMBERG MSG and INSTANT BLOOMBERG.

29. Since the inception of its archiving service for Bloomberg, Global Relay has consistently and in bad faith promoted and marketed its archiving service in a manner intended, and having the tendency, falsely to suggest an affiliation with or sponsorship by Bloomberg.

30. Global Relay promotes its archiving services through its "Services Guide: Cloud-Based Archiving & Messaging for Compliance" (the "Services Guide"). Attached as Exhibit B to this Complaint is an excerpt of the Services Guide that Global Relay used to promote its archiving service until, upon information and belief, October 15, 2015. Global Relay's website directed potential customers interested in "[l]earn[ing] more" about archiving services for Bloomberg messaging to pages contained in this excerpt.

31. Although Global Relay titled these pages "Global Relay Archive for Bloomberg," it displayed the "Bloomberg" name on this page in a larger font than its own "Global Relay" name. Global Relay also needlessly displayed the Bloomberg Mark a second time on this same page, and it did so using even larger typeface, which spanned almost half the length of the page, and which mimicked the distinctive Avenir lettering style and the current color scheme of the Bloomberg Logo.

32. The manner in which the Services Guide displayed the Bloomberg Mark is also materially identical to the manner in which it displayed, just two pages later, the "Thomson Reuters" trade name and THOMPSON REUTERS logo, in advertising its archiving services for Thomson Reuters messages. However, unlike with Bloomberg, Global Relay has "an exclusive worldwide Strategic Partnership with Thomson Reuters." The proximity and similarity in which the Services Guide identified similar services that it provides for both Bloomberg and Thomson Reuters messages further increased the likelihood of confusion regarding a relationship between Global Relay and Bloomberg.

33. In response to Bloomberg's objections, Global Relay has represented that it no longer will display the Bloomberg Mark in the distinctive Avenir font. However, contrary to this representation, Global Relay continues to do so. *See*

https://www.globalrelay.com/uploads/resources/files/GlobalRelay-Services-Guide.pdf, at p.16 (last visited Dec. 3, 2015).

34. Global Relay also consistently and intentionally misled customers and potential customers by representing that its Global Relay Archive service "captures your firm's incoming, internal and outgoing electronic messages," including messages sent through BLOOMBERG MSG and INSTANT BLOOMBERG, "*in real time*." Yet, neither Global Relay, nor any third-party vendor, can capture Bloomberg messaging data in real time because neither Global Relay nor any other third-party vendor has a direct portal to Bloomberg's proprietary platform, and thus they cannot access a subscriber's Bloomberg messages until these messages are made available to such vendors in batch mode – some 36 hours later. Global Relay continued to make this representation until, upon information and belief, October 15, 2015.

35. Global Relay also has advertised that its archiving service "seamlessly integrates with email and messaging systems," a benchmark that implies that Global Relay works in tandem with Bloomberg to archive Bloomberg's messages.

36. In addition, Global Relay has advised its customers in one-on-one communications that "Bloomberg provides its customers *and third party vendors* with access to its Bloomberg messaging data via HTTPS and File Transfer Protocol (FTP)." (Emphasis added). This too is false, as Bloomberg does not affirmatively provide any third-party vendor, and certainly not Global Relay, with such access. Global Relay's communications thus falsely imply the existence of a direct relationship between Bloomberg and Global Relay when no such relationship exists.

37. Global Relay's efforts falsely to imply a connection with Bloomberg are part of a pattern. Prior to January 2008, Global Relay offered its archiving service for

Bloomberg messaging under the name "Bloomberg Converter." It only ended its use of this intentionally deceptive name in response to a cease and desist letter sent by Bloomberg threatening legal action.

38. Similarly, at least until May 2011, Global Relay asserted on its website that "[l]eading companies such as Bloomberg . . . enable message archiving for their customers via *technology partnerships* with Global Relay." (Emphasis added). At no time did Global Relay have any partnership or affiliation – technology or otherwise – with Bloomberg.

39. Global Relay also falsely claimed to be the "largest provider of Bloomberg message archiving," despite the fact that Bloomberg itself is in fact the largest archiver of Bloomberg messages. Global Relay maintained this false representation until Bloomberg objected. Subsequently, Global Relay falsely represented that it was the "largest [third-party] downloader or converter of Bloomberg messages," until, once again, Bloomberg objected that this claim was false.

40. Finally, when Bloomberg first raised Global Relay's infringing use of the Bloomberg Mark on August 30, 2013, Global Relay's Services Guide displayed the Bloomberg Mark in orange lettering, a widely recognized color scheme that Bloomberg used up until 2010. Bloomberg has since changed its color scheme to black, and Global Relay accordingly altered its Services Guide to display the Bloomberg Mark in black, in an attempt to continue mimicking the Bloomberg Logo.

41. On information and belief, Global Relay's repeated misappropriation of the Bloomberg Mark and misrepresentations caused confusion and mistake by and among Bloomberg's customers, potential customers, and important contacts in the marketplace, and is

likely to cause confusion if continued, and has diluted and is likely to continue to dilute the Bloomberg Mark.

## COUNT ONE: FEDERAL TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1114)

42. Bloomberg repeats and realleges the allegations above as if fully set forth herein.

43. The Bloomberg Mark and the goodwill associated with it is of great and incalculable value, is highly distinctive, and has become universally associated in the public mind with Bloomberg's products and services, which are of the highest quality and reputation.

44. Global Relay has repeatedly used the Bloomberg Mark to advertise and promote its products and services in the United States in a manner which likely caused confusion, deception, and mistake by creating the false and misleading impression that Bloomberg endorsed, supported, sponsored, approved, or was affiliated, connected, or otherwise associated with Global Relay, to the damage of Bloomberg's reputation, goodwill, and sales.

45. Global Relay has used the Bloomberg Mark with knowledge or in willful blindness of its infringement.

46. Global Relay's activities are part of a pattern of repeated misappropriation of the Bloomberg Mark, and upon information and belief, Global Relay intends to continue its willfully infringing acts unless restrained by this Court. If these activities are not enjoined, Bloomberg will suffer irreparable harm and injury to its goodwill and reputation.

47. Global Relay has caused and will continue to cause injury to the public and to Bloomberg, and Bloomberg is entitled to injunctive relief and to recover treble damages, costs and reasonable attorney's fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## COUNT TWO: FEDERAL TRADEMARK DILUTION
### (15 U.S.C. § 1125(c))

48. Bloomberg repeats and realleges the allegations above as if fully set forth herein.

49. Bloomberg's registered trademarks are famous throughout the world and have been famous for many years. Bloomberg provides goods and services to users throughout the world, and those goods and services are synonymous with the Bloomberg name.

50. By its improper use of the Bloomberg Mark, Global Relay has blurred and/or tarnished the Bloomberg name and therefore has diluted Bloomberg's famous trademarks.

51. Global Relay has used the Bloomberg Mark with knowledge or in willful blindness of its dilution of Bloomberg's trademarks.

52. Global Relay's activities are part of a pattern of repeated misappropriation of the Bloomberg Mark, and upon information and belief, Global Relay intends to continue its willfully infringing acts unless restrained by this Court. If these activities are not enjoined, Bloomberg will suffer irreparable harm and injury to its goodwill and reputation.

53. Global Relay's conduct has caused and will continue to cause injury to the public and to Bloomberg, and Bloomberg is entitled to injunctive relief and to recover treble damages, costs, and reasonable attorney's fees under 15 U.S.C. § 1117.

## COUNT THREE: FEDERAL FALSE ADVERTISING
### (15 U.S.C. § 1125(a))

54. Bloomberg repeats and realleges the allegations above as if fully set forth herein.

55. Global Relay has made and distributed in interstate commerce advertisements or promotions that contain the false and misleading representation that its Global

Relay Archive service archives messages sent through BLOOMBERG MSG and INSTANT BLOOMBERG "in real time," and that Bloomberg "enable[d]" Global Relay's archiving of Bloomberg messages through a "technology partnership[]" with Global Relay.

56. These false statements misrepresent the nature, characteristics, and qualities of the Global Relay Archive service, and actually deceived or was likely to deceive in a material way a substantial segment of Plaintiffs' customers and potential customers

57. Global Relay's false statements have caused a competitive injury to Bloomberg.

58. Upon information and belief, by its acts, Global Relay has made and will make substantial profits and gains to which it is not in law or equity entitled.

59. The aforesaid acts of Global Relay constitute false advertisement in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

60. As a direct and proximate result of Global Relay's acts, Bloomberg has suffered actual damages in an amount to be proven at trial.

61. Upon information and belief, Global Relay's conduct was undertaken willfully and with the intention of causing confusion, mistake, or deception, making this an exceptional case under 15 U.S.C. § 1117.

62. Bloomberg is entitled to Global Relay's profits, treble damages, costs, and reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

## COUNT FOUR: NEW YORK TRADEMARK INFRINGEMENT

63. Bloomberg repeats and realleges the allegations above as if fully set forth herein.

64. Bloomberg owns all rights, title, and interest in and to the Bloomberg Mark as aforesaid, including all common law rights in such mark.

65. The aforesaid acts of Global Relay constitute trademark infringement in violation of the common law of the State of New York.

66. Upon information and belief, by its acts, Global Relay has made and will make substantial profits and gains to which it is not in law or equity entitled.

67. Upon information and belief, Global Relay intends to continue its willfully infringing acts unless restrained by this Court.

68. Global Relay's acts have damaged and will continue to damage Bloomberg.

## COUNT FIVE: NEW YORK UNFAIR COMPETITION

69. Bloomberg repeats and realleges the allegations above as if fully set forth herein.

70. The aforesaid acts of Global Relay constitute unfair competition in violation of the common law of the State of New York.

71. Upon information and belief, by its acts, Global Relay has made and will make substantial profits and gains to which it is not in law or equity entitled.

72. Upon information and belief, Global Relay intends to continue their willfully infringing acts unless restrained by this Court.

73. Global Relay's acts have damaged and will continue to damage Bloomberg.

## COUNT SIX: DECEPTIVE ACTS AND PRACTICES
**(N.Y. G.B.L. § 349)**

74. Bloomberg repeats and realleges the allegations above as if fully set forth herein.

75. The aforesaid acts of Global Relay constitute consumer-oriented conduct that has affected the public interest of New York and has resulted and/or may result in injury to consumers in New York and/or harm to the public.

76. By the acts described herein, Global Relay has willfully engaged in deceptive acts or practices in the conduct of its business in violation of New York General Business Law § 349.

77. Upon information and belief, Global Relay intends to continue their willfully infringing acts unless restrained by this Court.

78. Global Relay's acts have damaged and will continue to damage Bloomberg.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that the Court enter judgment in their favor and against Defendants as follows:

1. That Global Relay, its officers, agents, employees, and all persons acting for, with, by, through, or under it be permanently enjoined from using the Bloomberg Mark, whether in whole or in part, whether or not in connection with any additional element, in any manner in the United States, except for the limited purpose of informing customers and potential customers that it provides storage solutions for Bloomberg messages and then solely to the extent necessary to convey that fact, as Bloomberg has no adequate remedy at law for its injuries;

    2.  That Global Relay correct any erroneous impression persons may have derived concerning the nature, characteristics, or qualities of its Global Relay Archive service, including without limitation the placement of corrective advertising and providing written notice to the public;

    3.  That Global Relay pay Bloomberg monetary damages, in an amount to be determined at a trial by jury;

    4.  That Global Relay pay treble damages pursuant to 15 U.S.C. § 1117, as a result of willful and intentional violations of the Lanham Act;

    5.  That Global Relay pay Plaintiffs their costs, together with reasonable attorney's fees and disbursements, incurred in this action; and

    6.  That Bloomberg be granted such other and further relief as this Court deems just and proper.

Dated:  New York, New York
     December 10, 2015

            SHAPIRO ARATO LLP

            By: /s/ Chetan A. Patil
               Cynthia S. Arato
               Chetan A. Patil

            500 Fifth Avenue
            New York, New York 10110
            (212) 257-4880 (ph)
            (212) 202-6417 (fax)
            carato@shapiroarato.com
            cpatil@shapiroarato.com

            *Attorneys for Plaintiffs*